IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CR-255-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TREMAYNE A. LYNCH, | ) | |
| | ) | |
| Defendant. | ) | |

On December 30, 2020, Tremayne A. Lynch ("Lynch" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 125]. On August 15, 2022, Lynch, through counsel, filed a second memorandum, supplement, and exhibits in support [D.E. 137, 138, 140]. On November 14, 2022, the government responded in opposition [D.E. 145] and filed an exhibit in support [D.E. 146]. Lynch did not reply. As explained below, the court denies Lynch's motion for compassionate release.

I.

On December 3, 2013, pursuant to a written plea agreement [D.E. 26], Lynch pleaded guilty to conspiracy to possess with the intent to distribute a quantity of cocaine and cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one) and brandishing and discharging a firearm during and in relation to a drug trafficking crime and aiding and abetting in violation of 18 U.S.C. § 2 (count two). See Rule 11 Tr. [D.E. 57] 23–27.

On May 19, 2014, at Lynch's sentencing hearing, the court calculated Lynch's advisory guideline range as 240 months' imprisonment on count one, and 120 months' imprisonment on count

two, consecutive to the sentence on count one. See Sentencing Tr. [D.E. 58] 24. The court noted that, but for the statutory maximum, Lynch's advisory guideline range for count one would have been 360 months to life imprisonment. During the sentencing hearing, the court addressed Lynch's objections to the drug weight. See id. at 7–24. After calculating the advisory guideline range, the court upwardly departed under U.S.S.G. § 5K.2.2 (physical injury), § 5K2.3 (extreme psychological injury), § 5K2.4 (abduction or unlawful restraint), and § 5K2.8 (extreme conduct). See id. at 24–45. In doing so, the court recounted Lynch's horrific criminal conduct. Lynch participated in a home invasion and robbery in which a male victim was shot and a female victim was raped in front of her cowering six-year-old daughter. Although Lynch did not rape the victim, Lynch did force the naked victim into the living room after the rape, punched her in the face, and heated a knife on the stove, threatening to insert it into her vagina if she did not reveal the location of drugs and money that Lynch and his co-conspirators wished to steal. See id. at 24–26. After upwardly departing, the court calculated Lynch's advisory guideline range at 240 months on count one and life imprisonment on count two. Id. at 45.

After considering all relevant factors under 18 U.S.C. § 3553(a), the arguments of counsel, the government's motion under U.S.S.G. § 5K1.1 and Lynch's allocution, the court sentenced Lynch to 240 months' imprisonment on count one and 210 months' imprisonment on count two to run consecutively. See id. at 45–58. Thus, Lynch received a 450-month sentence. Lynch appealed. See [D.E. 50]. On February 10, 2015, the United States Court of Appeals for the Fourth Circuit affirmed Lynch's conviction and sentence. See United States v. Lynch, 601 F. App'x 191, 194 (4th Cir. 2015) (per curiam) (unpublished).

On October 1, 2015, Lynch moved to vacate his sentence under section 2255 [D.E. 64]. On June 17, 2016, the court dismissed the motion [D.E. 91].

2

On June 29, 2016, the government moved to reduce Lunch's sentence under Rule 35(b) of the Federal Rules of Criminal Procedure [D.E. 93]. On March 15, 2017, the court granted the motion and reduced Lynch's sentence on count two to 84 months' imprisonment to run consecutively to his 240-month sentence on count one, resulting in a total sentence of 324 months [D.E. 104]. All other aspects of the judgment remained the same. See id.

On September 3, 2019, Lynch filed a motion for the court to review his case in light of United States v. Davis, 139 S. Ct. 2319 (2019) [D.E. 108]. On October 18, 2019, filed a second motion to review his case under Davis [D.E. 109]. On November 19, 2019, Lynch moved for appointment of counsel [D.E. 110]. On April 13, 2020, the court denied the motions [D.E. 115]. Lynch appealed [D.E. 117]. On December 3, 2020, the Fourth Circuit dismissed the appeal [D.E. 122]. See United States v. Lynch, 830 F. App'x 410 (4th Cir. 2020) (per curiam) (unpublished).

On December 30, 2020, Lynch moved for appointment of counsel [D.E. 123]. The same day, the court granted the motion to appoint counsel [D.E. 124]. Lynch moves for compassionate release [D.E. 125]. The government opposes the motion [D.E. 145].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18

3

U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

4

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

In 2022, Lynch applied to his warden for compassionate release. See [D.E. 138-5]; [D.E. 140] 2. On July 16, 2020, his warden denied the request. See [D.E. 138-5]; [D.E. 140] 2. On January 20, 2021, Lynch filed another request for administrative remedy which was rejected on January 29, 2021. See [D.E. 138-5]; [D.E. 140] 2. Thus, the court addresses the merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

Lynch seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, the condition in prisons, his medical conditions (tuberculosis, overactive bladder, myopia, headaches, xerosis cutis, allergic rhinitis, acute maxillary sinusitis, frequency of micturition, acute bronchitis, and unspecified visual disturbance), his rehabilitative efforts, and his release plan. See [D.E. 125-1]; [D.E. 125-2] 2; [D.E. 137] 3; [D.E. 138-7]; [D.E. 138-8]; [D.E. 140] 3–6.

5

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Lynch has a history of tuberculosis and has overactive bladder, myopia, headaches, xerosis cutis, allergic rhinitis, acute maxillary sinusitis, frequency of micturition, acute bronchitis, and unspecified visual disturbance. See [D.E. 125-1]; [D.E. 137] 3; [D.E. 138-7]; [D.E. 138-8]; [D.E. 140] 3–5. Lynch's medical conditions are under control. See [D.E. 138-7]; [D.E. 138-8].

Lynch argues that his medical conditions put him at heightened risk of serious infection or death from COVID-19. See [D.E. 125-1];[D.E. 137] 3;[D.E. 140] 3–6. Lynch, however, received two doses of the Pfizer COVID-19 vaccine. See [D.E. 146]. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying

6

compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Lynch from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46.

Besides the heightened risk of COVID-19 infection due to the condition in prison, Lynch does not otherwise allege that the BOP is not treating and monitoring his medical conditions or that he is unable to provide self-care while incarcerated. Moreover, arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current medical conditions at USP Florence where Lynch is incarcerated, and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Apr. 20, 2023). Therefore, reducing Lynch's sentence because of his risk factors and the general risk of COVID-19 in prison does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the condition in prison, Lynch's medical conditions, his rehabilitative efforts,

7

and his release plan are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Lynch's sentence. See Conception, 142 S. Ct. at 2404; Reed, 58 F.4th at 821–22; Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

As for Lynch's history and characteristics, Lynch has an appalling and violent criminal history and has performed poorly on supervision. See Amended Presentence Investigation Report ("Am. PSR") [D.E. 43] ¶¶ 30–44. Lynch's convictions include resisting a public officer, reckless driving to endanger, assault with a deadly weapon, criminal contempt, possession of narcotics, driving while impaired (two counts), possession of cocaine, drinking beer or wine while driving, possession of an open container or consuming alcohol in the passenger area, ethnic intimidation, communicating threats, injury to real property, assault with a deadly weapon with intent to kill, discharging a weapon into occupied property, assault inflicting serious injury, and disorderly conduct. See id. Lynch has performed poorly on supervision, including violations for failure to obtain a substance abuse assessment, failure to complete community service, failure to abide by the financial obligation, and failure to report to probation officer, absconding from supervision, illegal drug use, failure to complete days in jail, and traveling out of state without permission. See id. ¶¶ 37–39, 43.

Lynch's latest offense conduct is horrifying. Lynch participated in a home invasion and robbery in order to steal drugs and drug money. During the robbery, a male victim was shot and a female victim was raped at gunpoint in front of her six-year-old daughter. Although Lynch did not

8

rape the victim, Lynch did force the naked victim into the living room after the rape, punched her in the face, and heated a knife on the stove, threatening to insert it into her vagina if she did not reveal the location of drugs and money. Sentencing Tr. at 24–26. In light of Lynch's history and characteristics, the court believes that Lynch poses a serious risk to the community if released.

Lynch has taken some positive steps while incarcerated. Lynch does not appear to have any infractions since 2019. See [D.E. 138-3]. Lynch also earned his GED and has taken other education and vocational training courses, including some college courses. See [D.E. 138-3, 138-4]. Furthermore, Lynch has maintained employment while incarcerated as a sanitation orderly. See [D.E. 138-3] 2. The court has taken all of this conduct into account. See Pepper, 562 U.S. at 491; High, 997 F.3d at 187–91; Chambers, 956 F.3d at 671–75; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398.

The court must balance Lynch's generally positive conduct in federal custody against his appalling criminal conduct, serious criminal history, poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion, 142 S. Ct. at 2403–04; Pepper, 562 U.S. at 480–81; Reed, 58 F.4th at 821–24; United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Lynch's exposure to COVID-19, the condition in prison, his medical conditions, his rehabilitative efforts, and his release plan[1].

---

[1] Upon release, Lynch plans to live with his mother in Rocky Mount, North Carolina. See [D.E. 125-1] 17. Lynch plans on finding work as a welder. See id. The court recognizes that Lynch has a supportive family. See id.

9

In light of Lynch's serious offense conduct and his appalling and violent criminal history, the court rejects Lynch's claim that he is no longer a danger to society. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Lynch's arguments, the government's persuasive response, the need to punish Lynch for his horrifying criminal behavior, to incapacitate Lynch, to promote respect for the law, to deter others, and to protect society, the court denies Lynch's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Reed, 58 F.4th at 821–24; Roane, 51 F.4th at 551–52; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 125].

SO ORDERED. This 21 day of April, 2023.

JAMES C. DEVER III
United States District Judge